UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES L. HENDERSON, M.D.                                                                PLAINTIFF

V.                                                          CIVIL ACTION NO. 3:25-CV-2-DPJ-ASH

PATRICIA DUNLAP, M.D. and
WALTER WILLIS, M.D.                                                                    DEFENDANTS

ORDER

Plaintiff James L. Henderson, M.D., sued Defendants Patricia Dunlap, M.D., and Walter Willis, M.D., alleging defamation, libel, and slander. Because Defendants are federal employees, the United States asks the Court to substitute it as the defendant and then dismiss the case for failure to exhaust administrative remedies under the Federal Tort Claims Act (FTCA).

There are five pending motions related to those issues (1) the Government's motion to dismiss [3]; (2) Plaintiff's motion to strike notice of removal [14]; (3) Plaintiff's motion for discovery and judicial review [15]; (4) the Government's amended motion to substitute party [32]; and (5) Plaintiff's amended motion to strike [35]. Each motion hinges on the same question—did Defendants commit the alleged torts while acting in the course and scope of their federal employment. The Court finds that Dr. Henderson is entitled to discovery on that issue and therefore grants his motion [15]. All other motions are denied without prejudice.

I.      Factual and Procedural Background

For purposes of the motion to dismiss, the Court takes the Complaint's well-pleaded allegations as true. Dr. Henderson began working as a physician at Choctaw Health Center on March 29, 2021. Compl. [1–1] ¶ 4. His employment was terminated on January 12, 2024. *Id.*

Dr. Dunlap was Dr. Henderson's supervisor, and Dr. Willis was the Health Center's Chief Medical Officer. *Id.* Dr. Henderson learned in June 2023 that Dr. Willis told Dr. Dunlap

that "Henderson just doesn't like women." *Id.* ¶ 9. Dr. Henderson says Dr. Willis's comments were "a derogatory (incorrect) comment about Plaintiff Henderson's sexual preference." *Id.* ¶ 10.

That same month, Dr. Henderson says Defendants started trying to get him fired. *Id.* ¶ 11. On June 14, Dr. Dunlap issued Dr. Henderson a warning for administering an antibiotic that was in a national drug shortage. *Id.* ¶ 20. The next month, Dr. Dunlap filed an Employee Counseling Form (VERBAL) Complaint against Dr. Henderson for the same issue. *Id.* ¶ 13. Then, in November 2023, Dr. Henderson received an employment-suspension letter from Dr. Dunlap, explaining that his suspension resulted from disruptive behavior and ordering and administering the wrong medication to two patients. *Id.* ¶ 17. On December 1, 2023, Dr. Willis sent Dr. Henderson a letter stating that the Medical Executive Committee met about his suspension and "recommended [ ] Henderson's expulsion from the Choctaw Health Center Staff effective immediately." *Id.* ¶ 22.

That same day, Dr. Willis filed a complaint against Dr. Henderson with the Mississippi State Board of Medical Licensure ("the Board"), informing the Board of Dr. Henderson's disciplinary infractions. *Id.* ¶ 5. And because of Dr. Henderson's expulsion, a request was sent to the National Practitioner Data Bank ("NPDB") on November 30, 2023, to revoke Dr. Henderson's clinical privileges. *Id.* ¶ 23. Finally, on January 11, 2024, Dr. Henderson received a letter stating that his employment would be terminated the next day. *Id.* ¶ 24.

Aggrieved, Dr. Henderson filed this suit in Hinds County Circuit Court against Defendants "for libel and defamation" based on the statements that led to his termination and revoked clinical privileges. Compl. [1-1] at 1. The Acting United States Attorney then certified that Dr. Dunlap and Dr. Willis were federal employees acting within the course and scope of

their employment during the alleged misconduct.  Cert. [1-2].[1]  On that basis, the Government removed the case to this Court citing 28 U.S.C. § 2679(d)(2).  Notice [1].

Once in this Court, the Government moved to substitute the United States for the individual defendants and dismiss the case because Dr. Henderson failed to exhaust his administrative remedies.  Defs.' Mot. [3].  It then moved to amend its motion to substitute.  Defs.' Mot. [32].  Dr. Henderson responded with a motion to strike the notice of removal, Pl.'s Mot. [14], and an amended motion to strike, Pl.'s Mot. [15].  He also moved for discovery and judicial review of the certification, claiming that Dr. Dunlap and Dr. Willis acted outside the course and scope of their employment when they defamed him.  Pl.'s Mot. [15].  And for that reason, Dr. Henderson also opposes substitution and dismissal.  *See* Pl.'s Resps. [13, 34].

II.     The Westfall Act

The five pending motions share a common question—whether individual Defendants Dr. Dunlap and Dr. Willis acted within the course and scope of their federal employment.  If so, then they are immune from suit under the Westfall Act, the United States should be substituted, and the case must be dismissed for failure to exhaust.

"The Westfall Act provides that when a federal employee is sued in state court, the Attorney General ('AG') or his designee may certify 'that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose.'"  *Bolton v. United States*, 946 F.3d 256, 259 (5th Cir. 2019) (quoting 28 U.S.C. § 2679(d)(2)).  The certification conclusively establishes removal jurisdiction, but it is "judicially

---

[1] The original certification of scope of employment was certified by former United States Attorney for the Southern District of Mississippi Todd Gee.  Gee has since resigned, and Defendants' amended certification is certified by Acting U.S. Attorney Patrick Lemon.  Cert. [31-2].

reviewable for the purpose of substituting the United States as the defendant." *Id.* (citing 28 U.S.C. § 2679(d)(2); *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432, 434 (1995)).

To properly rebut the certification, Dr. Henderson "must allege, in either the complaint or a subsequent filing, specific facts that, taken as true, would establish that the defendant[s'] actions exceeded the scope of [their] employment." *Id.* at 260 (citation omitted). And "there is no right to even 'limited discovery' unless a plaintiff has made allegations sufficient to rebut the Government's certification." *Id.* (quoting *Wuterich v. Murtha*, 562 F.3d 375, 386 (D.C. Cir. 2009)). In other words, "a plaintiff challenging the government's certification 'has no right to discovery unless and until she alleges facts that plausibly suggest the defendant acted outside the scope of her employment." *Id.* at 260 n.4 (cleaned up) (quoting *White v. United States*, 419 F. App'x 439, 443 (5th Cir. 2011)).

III.  Analysis

Whether Drs. Dunlap and Willis acted beyond the course and scope of their federal employment is based on "the law of the state in which the alleged misconduct occurred." *Id.* at 260 (citing *Palmer v. Flaggman*, 93 F.3d 196, 199 (5th Cir. 1996)). Thus, Mississippi law applies.

Mississippi courts examine the course and scope of employment by looking to Section 228 of the Restatement (Second) Agency:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
>> (a) it is of the kind he is employed to perform;
>>
>> (b) it occurs substantially within the authorized time and space limits; [and]
>>
>> (c) it as actuated, at least in part, by a purpose to serve the master . . . .
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228 (1958), *cited in Children's Med. Grp., P.A. v. Phillips*, 940 So. 2d 931, 935 (Miss. 2006) (en banc).

Under this standard, "even if [Defendants'] statements were slanderous—that doesn't necessarily mean that they weren't within the scope of employment." *Bolton*, 946 F.3d at 261 (examining Mississippi law). They could still fall within the course and scope of employment if "incident to the authority expressly conferred." *Id.* (quoting *Scott-Burr Stores Corp. v. Edgar*, 177 So. 766, 768 (1938)). Thus, "[t]he proper inquiry focuses on the underlying dispute or controversy, not on the nature of the tort, and is broad enough to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf." *Id.* at 262 (quoting *Smith v. Clinton*, 886 F.3d 122, 126 (D.C. Cir. 2018) (per curiam) (collecting cases)).

On the other hand, an employer "will not be held liable if the employee 'had abandoned his employment and was about some purpose of his own not incidental to the employment.'" *Adams v. Cinemark USA, Inc.*, 831 So. 2d 1156, 1159 (Miss. 2002) (quoting *Odier v. Sumrall*, 353 So. 2d 1370, 1372 (Miss. 1978)). What constitutes acts "incidental to" authorized conduct "is highly fact sensitive such that it can have no fixed legal meaning." *Id.* (citing *Loper v. Yazoo & M.V.R. Co.*, 145 So. 743, 745 (1933)). Instead, "[a] multitude of factors and circumstances must be considered, such as [the defendants'] responsibilities and *mind-set*, as well as those of a temporal and spatial nature." *Id.* (emphasis added).

Under this standard, Mississippi distinguishes intentional torts committed "in furtherance" of the employer's business from acts "motivated by personal animosity." *Id.* at 1160 (collecting cases). For example, the *Adams* defendant was a ticket taker at a movie cinema who refused to allow underaged movie goers into an R-rated movie. *Id.* at 1158. After an argument, the employee assaulted one of the customers. *Id.* While the employee was authorized

5

to deny entrance to underaged patrons, the court found that she acted outside the course and scope of employment because she "assaulted Adams because of anger, not because she was concerned about protecting Cinemark's property or increasing Cinemark's profit." *Id.* at 1160.

This distinction exists even when the defendant acts in ways that would otherwise be within their regular duties. "[N]ot all physical acts of the kind authorized performed within the time and at the place of service are within the scope of employment, since only those which the servant does in some part for the purpose of giving service to the master are included." *Children's Med. Grp., P.A.*, 940 So. 2d at 936 (citing Comment A to Sec. 228 of the Restatement (Second) of Agency); *see also Gulledge v. Shaw*, 880 So. 2d 288, 296 (Miss. 2004) (noting that bank teller's job responsibilities included notarizing documents but holding that notarizing forged documents was "not in the furtherance of the Bank's business—rather, it was a personal act").

With those guideposts, the Court considers the three defamatory statements Dr. Henderson alleges: (1) Dr. Willis's complaint to the Board; (2) Dr. Dunlap's letter suspending Dr. Henderson; and (3) a report to the NPDB. Compl. [31–1] ¶¶ 7, 16, 23. Those statements mostly assert that Dr. Henderson prescribed an improper medication to infants and was disruptive.

There is no dispute that Defendants were generally authorized, if not required, to report when their subordinate doctors breached the standard of care. *See* Defs.' Resp. [24] at 10 (citing 42 U.S.C. § 1133; Miss. Code Ann. § 73-25-8[3](c)). But as stated, that's not enough. *See Gulledge*, 880 So. 2d at 296. The question is whether they did so to further the employer's interests. Dr. Henderson says they didn't. He asserts instead that they lied about his breaching

6

the standard of care, and he suggests that they did so based on incorrect opinions about his sexuality. Henderson Aff. [12-1] ¶¶ 8, 11, 13; *see also* Compl. [1-1] ¶ 9.

Dr. Henderson offers non-conclusory averments and record evidence to support those assertions. For example, he alleges that he was told Dr. Willis questioned his sexuality in June 2023. Compl. [1-1] ¶ 9. He states that the disputed discipline started that same month and attaches supporting documentation. *See id.*; *see also* Compl. Ex. B [1-1] at 15 (noting reprimand in June 2023); *see also* Henderson Aff. [12-1] ¶ 13. He also denies breaching the standard of care in his affidavit and supporting exhibits. *See* Henderson Aff. [12-1] ¶ 8; Letter [12-1] at 24–25.

Defendants will likely dispute all that, but, at this stage, the Court must accept the non-conclusory facts as true. *Bolton*, 946 F.3d at 260. And based on those facts, Dr. Henderson has plausibly challenged the Government's certification. *See id.* at 260 n.4. In short, there is a plausible question whether Defendants acted in furtherance of the employer's business or for "personal animosity." *Adams*, 831 So. 2d at 1160 (distinguishing cases where intentional conduct furthered employer's business).

And those allegations are enough to obtain discovery. *Bolton* explains why. There, the plaintiffs sued two federal agents for defaming them while speaking with local media, but the district court found that they acted within the course and scope of employment. 946 F.3d at 261. Among the issues on appeal, the plaintiffs contested the decision disallowing course-and-scope discovery. *Id.* at 261–62. The Fifth Circuit affirmed, holding that discovery was unwarranted because the plaintiffs "identif[ied] no personal interests served by the agents' statements." *Id.* at 261 (distinguishing *Stokes v. Cross*, 327 F.3d 1210 (D.C. Cir. 2003) (reversing denial of course-

7

and-scope discovery)). Yet here, Dr. Henderson alleges personal interest motivated Defendants to lie about his performance.

IV.     Conclusion

The Court considered all arguments; those not addressed would not alter the ruling. Because Dr. Henderson is entitled to limited discovery on whether Defendants acted within the course and scope of employment, the Court grants his motion for discovery and judicial review [15]. The parties are instructed to confer and establish a discovery plan. If they cannot agree, the parties are directed to contact Magistrate Judge Andrew Harriss to request a telephonic conference. All other motions [3, 14, 32, and 35] are denied without prejudice to refiling once the parties conclude the limited discovery.[2]

**SO ORDERED AND ADJUDGED** this the 5th day of September, 2025.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[2] Despite stating in the first sentence of his Complaint that he asserts claims "for libel and defamation," Compl. [1-1] at 1, Dr. Henderson argues in one of his later briefs that his Complaint "specifically alleged malicious prosecution" along with wrongful termination. Pl.'s Reply [29] at 1. That's incorrect. The Complaint never mentions malicious prosecution. And while it does state that he was fired, it says the "lost employment" was "a direct and proximate result of the Defendants' report of false statements." Compl. [1-1] ¶ 26. In other words, lost income is an element of damages caused by the defamation. As drafted, the Complaint fails to include malicious prosecution or wrongful termination. Even if it does give notice of those claims, he has not pleaded facts making them plausible under Federal Rule of Civil Procedure 12(c). For example, the Complaint mentions no facts supporting any of the six malicious-prosecution elements, like "the institution of a criminal proceeding." *Strong v. Nicholson*, 580 So. 2d 1288, 1293 (Miss. 1991). Nor does it include facts suggesting that a malicious-prosecution claim could survive the immunity found in 28 U.S.C. § 2680(h). The wrongful-termination claim is no better. Mississippi is an at-will employment state. And while facts may exist to circumvent that law, Dr. Henderson has neither pleaded nor explained them. If valid claims potentially exist, Dr. Henderson will need to seek leave to amend under Rule 15 and Local Uniform Civil Rule 15. Any such motion must be filed within 14 days of this Order.